John Barnes, Appellee, v. Chicago City Railway Company, Appellant.

Gen. No. 14,477.

1. EVIDENCE—*when of medical expert incompetent.* A medical expert who was called not for purposes of treatment but for qualification, when asked to testify should not be permitted to answer a question as follows: "Can he (plaintiff) flex his fingers to his palm?"

2. INSTRUCTIONS—*when as to preponderance of evidence erroneous.* An instruction is erroneous which directs the jury to find "that the preponderance of the evidence is on the side sustained by a certain class of witnesses, namely, a class which in their judgment is the more intelligent and better informed."

Action in case for personal injuries. Appeal from the Circuit Court of Cook county; the Hon. MERRITT W. PINCKNEY, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1908. Reversed and remanded. Opinion filed March 26, 1909. Rehearing denied April 7, 1909.

WM. J. HYNES, ALBERT T. JOHNSON and WATSON J. FERRY, for appellant; JOHN R. HARRINGTON, of counsel.

JOHN A. BLOOMINGSTON, for appellee.

MR. PRESIDING JUSTICE SMITH delivered the opinion of the court.

This is an appeal from a judgment of the Circuit Court in favor of appellee and against appellant.

The record shows that appellee Barnes with his daughter-in-law and his son boarded a Cottage Grove avenue car operated by appellant and paid his fare, and obtained a transfer on the Sixty-third street car line, also operated by appellant. The evidence on the part of appellee tends to show that the conductor of the car was notified between Sixty-fourth and Sixty-third streets that the party wished to alight at Sixty-third street, and that he was again notified at Sixty-third street. At this point appellee and his party arose from their seats and started for the rear platform,

and appellee stepped down on to the car step, the daughter-in-law standing in the car door while the son was immediately behind her. The train crossed Sixty-third street at a slow speed. Appellee stood on the step waiting for the train to stop. When it reached a point north of Sixty-third street, the conductor gave a signal for it to proceed. The train started with a jerk and appellee, although grasping the hand-rail attached to the car with his left hand, was thrown off the car to the ground and received the injuries to his hand and other injuries of which he complains.

Appellant's evidence supports the theory that when the train reached Sixty-third street there were no passengers who desired to alight at that point, and no persons on the north side of the street who desired to board the train, and the conductor gave a signal to proceed and the train did proceed. When the rear end of the train reached a point about 150 feet north of Sixty-third street appellee left his seat, announced his desire to alight and went to the rear platform and stepped down to the lower step, and while the train was still in motion stepped off and fell to the ground.

Inasmuch as the judgment must be reversed for error in procedure we refrain from discussing the evidence.

During the examination of Dr. Fox, a witness called by appellee, the witness was asked by appellee's attorney the following question: "Q. Can he (plaintiff) flex his fingers to his palm?" and over the objection of attorney for appellant that the question called for matter purely subjective, and a symptom that was within the control of appellee, the witness was permitted to answer, "No".

The witness had testified that he first saw appellee with reference to the accident in question about October 4, 1903, and that he treated his injuries for a period of nearly six months, not constantly, but from time to time. He was called about a week before the

trial to examine the hand, not for treatment of the hand, but to look it over and find out how much mobility there was in the hand, as he testified, and thus to qualify himself to give an opinion as to its condition. Thereupon he was asked the above question. He further testified on cross-examination, "These muscles that run down there are under the control of the patient; they are known as voluntary muscles."

The admission of this evidence was erroneous, we think, under the familiar rule stated in Greinke v. Chicago City Ry. Co., 234 Ill. 564 (page 571), as follows: "An expert witness called under such circumstances must base his opinion upon objective, and not subjective conditions." It is true the witness expressed the opinion that he did not think it possible for an individual to resist, that is to control those muscles and resist any bending of the fingers, but he admitted he could not know exactly how much resistance the individual might exert in overcoming the power of the witness as that would depend upon the size of the man, and how much power he would exert. So that whether appellee was able to flex his fingers to his palm was a matter within his control, to some extent, and subject to his will, and yet the evidence of appellee's self-serving demonstration was allowed to go to the jury for its consideration. We do not hold, however, that under the special circumstances of this case, and considering that the witness had treated the hand as above set forth, the admission of the testimony was reversible error. We think it was clearly erroneous.

At the request of appellee the court submitted to the jury the following instruction:

"The jury are instructed that the fact that the number of witnesses testifying on one side is larger than the number testifying on the other side does not necessarily determine that the preponderance of evidence is on the side for which the larger number testified. In order to determine that question the jury must be

governed by and take into consideration the appearance and conduct of the witnesses while testifying, the apparent truthfulness of their testimony, or the lack of it, their apparent intelligence or the lack of it, their opportunity of knowing or seeing the facts or subjects concerning which they testified, or the absence of such opportunity, their interest or the absence of interest in the result of the case, and from all these facts as shown by the evidence, and from all the other facts and circumstances shown, the jury must decide on which side is the preponderance.''

The testimony was conflicting on material questions in the case. The instruction directs the jury to find ''that the preponderance of the evidence is on the side sustained by a certain class of witnesses, namely, the class which in their judgment is the more intelligent and better informed.'' It does not announce a correct rule of law. Eastman v. West Chicago St. R. R. Co., 79 Ill. App. 585; C. W. D. R. W. Co. v. Bert, 69 Ill. 388; Hope v. West Chicago St. R. R. Co., 82 Ill. App. 311. While it is proper, and the duty of the jury, to consider the attributes named in the instruction in passing upon the credibility of the witnesses and the weight of their testimony, they should not be governed by the intelligence or lack of intelligence of the witnesses in determining the question of the preponderance of the evidence. The instruction is misleading. An instruction in regard to the weight and preponderance of the evidence goes to the entire case, and if misleading and erroneous, the error cannot be ignored.

The judgment must be reversed and the cause remanded.

*Reversed and remanded.*